## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAACO ENTERPRISES, INC.** | : | **CIVIL ACTION NO.: 2:02-CV-3997** |
| **381 Brooks Road** | : | |
| **King of Prussia, PA 19406** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **GRASALDO, INC.** | : | |
| **Maaco Auto Painting and Bodyworks** | : | |
| **12680 S.E. Berwick Court** | : | |
| **Hobe Sound, FL 33455** | : | |

## <u>ORDER</u>

**AND NOW**, this ____ day of _____, 2002, upon consideration of the Civil Action Complaint and the Motion for Preliminary and Permanent Injunction filed by plaintiff Maaco Enterprises, Inc. ("Maaco"), and after notice and hearing, it is

**ORDERED**  that Plaintiff's Motion for Preliminary and Permanent Injunction is **GRANTED**.  It is further

**ORDERED** that defendant Grasaldo, Inc. shall immediately and permanently cease to use, by advertising or in any manner whatsoever, any equipment, confidential methods, procedures and techniques associated with the Maaco System as described in the Maaco Enterprises, Inc. Franchise Agreement entered into between Maaco and defendant dated February 20, 1992 (the "Franchise Agreement"), the trade and service mark "Maaco Auto Painting and Bodyworks", and any trade names, trademarks or service marks, trade dress and distinctive forms, slogans, signs, symbols, or devices associated with the Maaco business system (the "System").  In particular, defendant shall cease to use, without limitation, all signs, equipment, advertising materials, stationery, forms and any other articles which display Maaco's trademarks or service marks, tradenames and trade dress.  It is further

**ORDERED** that defendant Grasaldo, Inc. shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the name "Maaco Auto Painting and Bodyworks" or any other service mark or trademark of Maaco. It is further

**ORDERED** that defendant Grasaldo, Inc. shall immediately turn over to Maaco all manuals, records, files, instructions, correspondence, all materials related to the operation of defendant's former Maaco franchise including, without limitation, all brochures, agreements, and any and all other materials relating to the operation of defendant's former Maaco franchise in defendant's possession. It is further

**ORDERED** that defendant Grasaldo, Inc. shall not, for a period of one (1) year from the date of this Order, either directly or indirectly, for itself or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, own, maintain, engage in, be employed by or have any interest in any business specializing in whole or in part in providing automobile painting or body repair services or products at 1934 Church Street, West Palm Beach, Florida, or within a radius of ten (10) miles of 1934 Church Street, West Palm Beach, Florida. It is further

**ORDERED** that defendant Grasaldo, Inc. shall not, either directly or indirectly, at any time or in any manner, identify itself or any business owned by it as a current or former Maaco Auto Painting and Bodyworks Center or as otherwise associated with Maaco, or use in any manner or for any purpose any of Maaco's trade names, trademarks or service marks, trade dress or any colorable imitation thereof. It is further

**ORDERED** that defendant Grasaldo, Inc. shall not divert or attempt to divert any business or customer of defendant's former Maaco franchise to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to

the goodwill associated with any of Maaco's trade names, trademarks or service marks or the Maaco System.  It is further

**ORDERED**  that defendant Grasaldo, Inc. shall not employ or seek to employ any person who is at that time employed by Maaco or by any other franchisee of Maaco, or otherwise directly or indirectly induce such person to leave his or her employment with Maaco or such franchisee.  It is further

**ORDERED**  that defendant Grasaldo, Inc. shall cancel any telephone service to defendant's former Maaco franchise advertised under Maaco's name, and assign all telephone numbers used in defendant's former Maaco franchise to Maaco.

**BY THE COURT:**

—

_____

Honorable Michael M. Baylson

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAACO ENTERPRISES, INC.** | : | **CIVIL ACTION NO.: 2:02-CV-3997** |
| **381 Brooks Road** | : | |
| **King of Prussia, PA 19406** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **GRASALDO, INC.** | : | |
| **Maaco Auto Painting and Bodyworks** | : | |
| **12680 S.E. Berwick Court** | : | |
| **Hobe Sound, FL 33455** | : | |

## ORDER FOR HEARING

 **AND NOW**, this ____ day of _____, 2002, upon consideration of plaintiff

Maaco Enterprises, Inc.'s Motion for Preliminary and Permanent Injunction,

 **IT IS ORDERED** that defendant Grasaldo, Inc. shall show cause why a preliminary and

permanent injunction should not issue in accordance with the relief requested by plaintiff.  The hearing on

the preliminary and permanent injunction shall be held at the United States District Court for the Eastern

District of Pennsylvania, United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania, Room

_____, on the ____ day of _____, 2002, at _____ o'clock ___.m.

 **BY THE COURT:**

___

_____

Honorable Michael M. Baylson

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAACO ENTERPRISES, INC.** | : | **CIVIL ACTION NO.: 2:02-CV-3997** |
| **381 Brooks Road** | : | |
| **King of Prussia, PA 19406** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **GRASALDO, INC.** | : | |
| **Maaco Auto Painting and Bodyworks** | : | |
| **12680 S.E. Berwick Court** | : | |
| **Hobe Sound, FL 33455** | : | |

## PLAINTIFF MAACO ENTERPRISES, INC.'S MOTION FOR
## PRELIMINARY AND PERMANENT INJUNCTION

Plaintiff Maaco Enterprises, Inc. ("Maaco"), by its undersigned counsel, submits this Motion for Preliminary and Permanent Injunction to preliminarily and permanently enjoin defendant's unauthorized use of Maaco's trademarks, trade names and service marks, and to preliminarily and permanently enforce a covenant not to compete agreed to by the parties.  In support of its Motion, Maaco states as follows:

1.      Maaco is engaged in the business of franchising Maaco Auto Painting and Bodyworks Centers which specialize in  automobile painting and body repair and other automotive products and services.

2.      Maaco franchisees are licensed to use Maaco's trade names, trademarks or service marks, and trade dress to operate under the Maaco business system.

3.      Maaco owns the mark and related logo "Maaco Auto Painting and Bodyworks," which is registered with the United States Patent and Trademark Office - No. 1,050,442.

4.      On February 20, 1992, Maaco and Salvatore and Dolores Gregoire (the "Gregoires") entered into a Maaco Auto Painting & Bodyworks Franchise Agreement (the "Franchise Agreement"), under which the Gregoires were granted the right and undertook the obligation to operate a Maaco Auto Painting and Bodyworks Center at 1934 Church Street, West Palm Beach, Florida (the "Center").

5.      On the same date, Maaco, the Gregoires and Grasaldo entered into an Assignment and Assumption Agreement (the "Assignment"). The Assignment was entered into by Maaco at the Gregoires' request so that they could operate their Maaco Center through Grasaldo. Under the Assignment, the Gregoires transferred their rights in the Franchise Agreement to Grasaldo, and Grasaldo assumed all of the Gregoires' obligatijons under the Franchise Agreement. The Gregoires, however, agreed to continue to be bound by the provisions o the Franchise Agreement and agreed to guarantee all of Grasaldo's obligations under the Franchise Agreement.

6.      After Franchisees entered into the Franchise Agreement with Maaco, Franchisees failed to meet their obligations under the Franchise Agreement.

7.      On November 28, 2001, Salvatore and Dolores Gregoire filed a petition under Chapter 7 of the Bankruptcy Code in U.S. Bankruptcy Court for the Southern District of Florida.

8.      In the course of the bankruptcy proceedings, the Gregoires did not assume the Maaco Franchise Agreement within the time permitted under the Bankruptcy Rules. Accordingly, the Franchise Agreement is deemed rejected by the Gregoires.

9.      As a result of the Gregoires' bankruptcy and the automatic stay in place, this action does not seek relief against the Gregoires.

10.    Under the terms of the Franchise Agreement, Maaco granted defendant the right to use Maaco's trademarks, service marks, trade names and trade dress and provided to defendant confidential information regarding the operation of a Maaco Auto Painting and Bodyworks Center.  In return, defendant was required, among other things, to pay Maaco a weekly royalty fee equal to a percentage of the gross receipts generated by the Center, to submit weekly reports to Maaco of the gross receipts generated by the Center, and to pay Maaco an advertising contribution.  Defendant also agreed to pay Maaco for paint and supplies purchased from Maaco.

11.    On May 1, 2002, after providing defendant with various notices of its defaults and opportunities to cure its defaults, Maaco terminated the Franchise Agreement.

12.    Under the Franchise Agreement, defendant agreed that on termination of the Franchise Agreement it would cease using Maaco's trademarks, service marks, trade names and trade dress and would otherwise cease holding itself out as authorized Maaco franchisees (Franchise Agreement, ¶¶ 8 and 15).  Defendant also agreed that it would not, for a period of one (1) year from the termination of the Franchise Agreement, operate a business similar to its former Maaco franchise within a ten (10) mile radius of the Center.  (Franchise Agreement, ¶ 17).

13.    Despite the termination of the Franchise Agreement, defendant is continuing to hold itself out as unauthorized Maaco franchisee, is continuing to use Maaco's trademarks, service marks, trade names and trade dress, and is continuing to operate a business similar, if not identical, to its former Maaco franchise, all in breach of its post-termination obligations under the Franchise Agreement.

14.    As a result of defendant's unlawful conduct, Maaco submits this Motion to enjoin defendant from continuing to use Maaco's proprietary marks, trade secrets, confidential information and business system after its right to do so has been terminated, to enjoin defendant's continued operation of

3

an automobile painting and body repair business within a ten (10) mile radius of the Center in breach of the post-termination covenant under the Franchise Agreement, and to otherwise enforce defendant's post-termination obligations under the Franchise Agreement.

15.    Maaco has a high probability of success on the merits of its case because defendant is openly and unlawfully using Maaco's trademarks, trade names and service marks without Maaco's consent, and is continuing to operate an automobile painting and body repair business at the exact location of the former Maaco Center in violation of a valid and enforceable restrictive covenant agreed to by the parties.

16.    Defendant's unauthorized operation of its former Maaco franchise and defendant's unlawful use of Maaco's proprietary marks will cause Maaco irreparable injury in that Maaco will have difficulty franchising and refranchising defendant's trading area, business in defendant's trading area will be diverted from Maaco's authorized franchisees, and the goodwill related to Maaco's trademarks, trade dress and business system will be diluted and taken from Maaco's control.

17.    Maaco has no adequate remedy at law in that the damages as set forth above, including the misappropriation and theft of its proprietary marks, business system and trade secrets and the consequent injury to consumer recognition and goodwill, and the inability to refranchise the affected trading area, cannot be compensated in monetary damages.

18.    Additionally, Maaco's authorized franchisees and the consuming public will suffer irreparable harm as a result of the defendant's conduct.  The damages sustained by Maaco as a result of the loss of its goodwill, the relationship problems encountered with its franchisees and the potential deception and harm to the consuming public cannot be ascertained nor can such harm be compensated for in monetary damages.

4

19.    Maaco's immediate and irreparable harm will increase unless and until defendant is enjoined from infringing upon Maaco's proprietary marks, violating its post-termination obligations and otherwise competing unfairly with Maaco.

20.    Maaco respectfully submits that a preliminary and permanent injunction is the only method by which Maaco can prevent the further usurpation of its trademarks, business system and trade secrets.

**WHEREFORE**, plaintiff Maaco Enterprises, Inc. respectfully requests that this Court enter a preliminary and permanent injunction against defendant Grasaldo, Inc. as follows:

a.    That defendant Grasaldo, Inc. shall immediately and permanently cease to use, by advertising or in any manner whatsoever, any confidential methods, procedures and techniques associated with the Maaco System as described in the Maaco Enterprises, Inc. Franchise Agreement entered into between Maaco and defendant on February 20, 1992 (the "Franchise Agreement"), the trade and service mark "Maaco Auto Painting and Bodyworks", and any trade names, trademarks or service marks, trade dress and distinctive forms, slogans, signs, symbols, or devices associated with the Maaco System. In particular, defendant shall cease to use, without limitation, all signs, equipment, advertising materials, stationery, forms and any other articles which display Maaco's proprietary trademarks or service marks, tradenames and trade dress;

b.    That defendant Grasaldo, Inc. shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the

5

name "Maaco Auto Painting and Bodyworks" or any other service mark or trademark of Maaco;

c.      That defendant Grasaldo, Inc. shall immediately turn over to Maaco all manuals, records, files, instructions, correspondence, all materials related to the operation of defendant's former Maaco franchise including, without limitation, all operations and other manuals, brochures, agreements, and any and all other materials relating to the operation of defendant's former Maaco franchise in defendant's possession;

d.      That defendant Grasaldo, Inc. shall not, for a period of one (1) year from the date of this Court's Order, either directly or indirectly, for itself or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, own, maintain, engage in, be employed by or have any interest in any business specializing in whole or in part in providing automobile painting or body repair services or products at 1934 Church Street, West Palm Beach, Florida, or within a radius of ten (10) miles of 1934 Church Street, West Palm Beach, Florida;

e.      That defendant Grasaldo, Inc. shall not, either directly or indirectly, at any time or in any manner, identify itself or any business owned by it as a current or former Maaco Auto Painting and Bodyworks Center or as otherwise associated with Maaco, or use in any manner or for any purpose any of Maaco's trademarks, trade names or service marks, or any colorable imitation thereof;

6

f.      That defendant Grasaldo, Inc. shall not divert or attempt to divert any

business or customer of defendant's former Maaco franchise to any

competitor, by direct or indirect inducement or otherwise, or do or

perform, directly or indirectly, any other act injurious or prejudicial to the

goodwill associated with the any of Maaco's trademarks, trade names or

service marks or the Maaco System; and

g.      That defendant Grasaldo, Inc. shall not employ or seek to employ any

person who is at that time employed by Maaco or by any other

franchisee of Maaco, or otherwise directly or indirectly induce such person

to leave his or her employment with Maaco or such franchisee.

Respectfully submitted,

WIGGIN & DANA LLP

By:_____

    Joseph Schumacher (I.D. No: 45726)
    Kimberly S. Toomey (I.D. No: 75198)
    1055 Westlakes Drive, 3rd Floor
    Berwyn, PA  19312
    (215) 545-5200

    Attorneys for Plaintiff
    Maaco Enterprises, Inc.

Dated:  August 13, 2002

8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAACO ENTERPRISES, INC.** | : | **CIVIL ACTION NO.: 2:02-CV-3997** |
| **381 Brooks Road** | : | |
| **King of Prussia, PA 19406** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **GRASALDO, INC.** | : | |
| **Maaco Auto Painting and Bodyworks** | : | |
| **12680 S.E. Berwick Court** | : | |
| **Hobe Sound, FL 33455** | : | |

## PLAINTIFF MAACO ENTERPRISES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION

### I.    INTRODUCTION

Plaintiff Maaco Enterprises, Inc. ("Maaco") submits this Memorandum of Law in support of its Motion for Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65(a) and Section 34 of the Lanham Act, 15 U.S.C. § 1116(a).[1]  Maaco seeks to enjoin defendant Grasaldo, Inc.'s ("Grasaldo") unauthorized use of Maaco's trademarks or service marks tradenames and trade dress.  Maaco also seeks to enjoin defendant's operation of an automobile painting and body repair shop in violation of a valid restrictive covenant agreed to by the parties.

---

[1]  Section 34 of the Lanham Act, the Federal trademark protection act, provides that:

The several courts vested with jurisdiction of civil actions arising under [the Lanham] Act shall have the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under section 43(a) [of the Lanham Act, 15 U.S.C. §1125(a)].

## II.    BRIEF STATEMENT OF FACTS

Maaco is a national franchisor of Maaco Auto Painting and Bodyworks Centers which specialize in automobile painting and body repair and other automotive products and services.  On February 20, 1992, Maaco and Salvatore and Dolores Gregoire (the "Gregoires") entered into a Maaco Franchise Agreement (the "Franchise Agreement") under which Maaco granted the Gregoires the right, during the term of the Franchise Agreement, to use Maaco's trademarks, service marks, tradenames and trade dress, and provided to the Gregoires confidential information regarding the operation of a Maaco Auto Painting and Bodyworks Center (Complaint at ¶ 9).  On the same date, Maaco, the Gregoires and Grasaldo, entered into an Assignment and Assumption Agreement (the "Assignment").  The Assignment was entered into by Maaco at the Gregoires' request so that the Gregoires could operate their Maaco Center through Grasaldo.

Under the Assignment, the Gregoires transferred their  rights in the Franchise Agreement to Grasaldo, and Grasaldo assumed all of the Gregoires' obligations under the Franchise Agreement.  The Gregoires, however, agreed to continue to be bound by the provisions of the Franchise Agreement and agreed to guarantee all of Grasaldo's obligations under the Franchise Agreement.  In return, the Gregoires and Grasaldo were required, among other things, to pay Maaco a weekly royalty fee equal to a percentage of the gross receipts generated by their Maaco center (the "Center"), to submit weekly reports to Maaco of the gross receipts generated by the Center, and to pay Maaco an advertising contribution. They also agreed to pay Maaco for paint and supplies purchased from Maaco (Complaint at ¶¶ 11-12).

After Franchisees entered into the Franchise Agreement with Maaco, Franchisees failed to meet their obligations under the Franchise Agreement.  On November 28, 2001, Salvatore and Dolores Gregoire filed a petition under Chapter 7 of the Bankruptcy Code in U.S. Bankruptcy Court for the Southern District of Florida.  In the course of the bankruptcy proceedings, the Gregoires did not assume

2

the Maaco Franchise Agreement within the time permitted under the Bankruptcy Rules. Accordingly, the Franchise Agreement is deemed rejected by the Gregoires. As a result of the Gregoires' bankruptcy and the automatic stay in place, this action does not seek relief against the Gregoires. On May 1, 2002, after various notices of its defaults and opportunities to cure, Maaco terminated the Franchise Agreement (Complaint at ¶19).

Under the terms of the Franchise Agreement, defendant agreed that, upon termination, it would cease using Maaco's trademarks, service marks, tradenames and trade dress and would otherwise cease holding itself out as authorized Maaco franchisees (Franchise Agreement, ¶¶ 8 and 15). Defendant also agreed that it would not, for a period of one year following the termination of the Franchise Agreement, operate a business similar to its former Maaco franchise within a ten mile radius of the Center (Franchise Agreement, ¶ 17).

Despite the termination of the Franchise Agreement, defendant is continuing to hold itself out as an authorized Maaco franchisee, is continuing to use Maaco's trademarks, service marks, trade names and trade dress without Maaco's permission, and is continuing to operate a business similar, if not identical, to its former Maaco franchise in violation of the Franchise Agreement covenant not to compete (Complaint at ¶¶ 21-23). Maaco now seeks to enjoin defendant's unlawful acts.

## III.    ARGUMENT

### A.    MAACO IS ENTITLED TO ENJOIN DEFENDANT'S UNAUTHORIZED AND UNLAWFUL USE OF MAACO'S TRADEMARKS, SERVICE MARKS, TRADE NAMES AND TRADE DRESS.

In deciding whether a preliminary injunction should issue, this Court must consider the following four factors:

(1)    the likelihood that the applicant will prevail on the merits at a final hearing;

> (2)    the extent to which the plaintiff [is] being irreparably harmed by the conduct complained of;
>
> (3)    the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and
>
> (4)    the public interest.

S & R Corp. v. Jiffy Lube Intern., Inc., 968 F.2d 371, 374 (3d Cir. 1992). As will be demonstrated below, application of the facts in the case at bar to the above four factors will permit this Court to grant Maaco's request for injunctive relief.

### 1.    Maaco has a strong likelihood of success on the merits at trial.

> To prevail on a trademark claim, a plaintiff must establish that:
>
> (1)    the marks are valid and legally protectable;
>
> (2)    the marks are owned by the plaintiff; and
>
> (3)    the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services.[2]

Opticians Ass'n v. Independent Opticians, 920 F.2d 187, 192 (3d Cir. 1990); See also Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277 (3d Cir. 1991). Applying these factors to the case at bar demonstrates Maaco's strong likelihood of success at a trial on the merits.

First, Maaco's trademark is valid and legally protectable, as it has been properly registered in accordance with the Lanham Act, 15 U.S.C. §§ 1051, et seq. Second, the Maaco trademark and trade dress are owned by Maaco. Finally, defendant's unauthorized use of the Maaco trademark is likely to create confusion concerning the unauthorized products and services offered by defendant. With respect

---

[2]    Section 32 of the Lanham Act, 15 U.S.C. § 1114, holds liable "[a]ny person who shall, without the consent of the registrant -- (a) use in commerce any reproduction ... of a registered mark ... in connection with which such use is likely to cause confusion." See also S&R at 376.

to this factor, the Third Circuit has repeatedly held that "'there is a great likelihood of confusion when the infringer uses the exact trademark' as the plaintiff." S & R, supra, at 375 (quoting from Opticians, supra, at 195). In these cases, "[the] likelihood of confusion is inevitable." Opticians at 195. As noted by the Opticians court:

> Cases where a defendant uses an identical mark on competitive goods hardly ever find its way into the appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement.

Opticians at 195 (quoting from 2 McCarthy, Trademarks and Unfair Competition, § 23:3) (emphasis added).

In S & R, supra, the court found that defendant (whose right to use the Jiffy Lube trademark had been terminated) and Jiffy Lube were using the same legally protectable trademark, which was owned by Jiffy Lube, and that "its concurrent use [was] highly likely to cause consumer confusion about [defendant's] affiliation with the [Jiffy Lube] franchise." S & R at 375. Accordingly, the court found that Jiffy Lube had met its burden under section 43(a) of the Lanham Act.[3] In the case at bar, both the defendant and

---

[3]   Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides that:

(1)  Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name symbol, or devise, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which --

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B)  in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

authorized Maaco franchisees are using Maaco's trademarks, trade names and service marks.  As in S & R, defendant's continued unauthorized use of Maaco's proprietary marks is highly likely to cause confusion among consumers regarding defendant's affiliation with the Maaco system.  Accordingly, and consistent with precedent established in this Circuit, this Court should find that Maaco has demonstrated a likelihood of success on the merits at trial.

   2.    **Defendant's unauthorized use of Maaco's trademarks, service marks, trade names and trade dress is causing Maaco irreparable harm.**

"In a trademark infringement case, grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill."  S & R at 378.  As stated by the Opticians court:

> A plaintiff's mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill.  If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control.  This is an injury, even though the borrower does not tarnish it, or divert any sales by it's use.'

Opticians at 195 (quoting from Ambassador East, Inc. v. Orsatti, Inc., 257 F.2d 79, 82 (3d Cir. 1958)).

Irreparable injury may also be based on the possibility of confusion between authorized and unauthorized use of the trademark.  S & R at 370.  As discussed above, where the infringer and the owner are concurrently using an identical trademark, consumer confusion will likely follow.  Id. at 375.

Finally, and most importantly, trademark infringement amounts to irreparable injury as a matter of law.  S&R at 378 (citing Opticians at 196).  See also  Hasbro Inc. v. Landard Toys, Ltd., 858 F.2d 70, 73 (2d Cir. 1986); International Kennel Club. Inc. v. Mighty Star, Inc., 846 F.2d 1079, 1092 (7th Cir. 1988); Home Box Office, Inc. v. Showtime The Movie Channel, Inc., 832 F.2d 1311, 1314 (2d Cir. 1987); General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 625 (8th Cir. 1987); Church of Scientology International v. Elmira Mission of the Church of Scientology, 794 F.2d 38, 41 (2d Cir. 1986).

In determining whether Jiffy Lube would suffer irreparable harm as a result of the defendant's continued unauthorized use of the Jiffy Lube trademark, the S & R court found that:

> because we have concluded that Jiffy Lube is likely to prove at trial that [defendant] is infringing its trademark, we find that Jiffy Lube has a fortiori alleged irreparable harm.

Id. at 378.  The Opticians court came to a similar conclusion:

> Since we have already held that concurrent use of the . . . marks . . . creates the likelihood of confusion, the inescapable conclusion is that there was also irreparable injury.

Opticians at 196-197 (emphasis added).

Even where there is no evidence of product inferiority, the fact that a trademark owner unwillingly had the symbol of its reputation placed in an infringer's hands is itself an example of irreparable injury.  Louis Rich, Inc. v. Horace W. Longacre, Inc., 423 F. Supp. 1327, 1335 (E.D. Pa. 1976).  The injury sought to be avoided relates to the owner's right to have exclusive control over the symbol of its reputation.  Carlin Brewing Co. v. Philip Morris, Inc., 277 F. Supp. 326, 335-36 (N.D. Ga. 1967).

A finding of irreparable harm in this case is similarly warranted.  First, the Maaco mark is plaintiff's "authentic seal."  Opticians at 195.  By it, Maaco "vouches for the goods [and services] which bear its name."  Id.  Defendant's continued unauthorized use of Maaco's trademark interferes with Maaco's ability to control the quality of the Maaco goods and services which defendant continue to purport to provide.  Maaco will suffer irreparable harm in that its loss of control over the trademark will lead to loss of trade and loss of goodwill.  S & R at 378.  In addition, Maaco will have difficulty refranchising defendant's trading area, and the business in defendant's trading area will be diverted from Maaco's authorized franchisees.

Second, and as explained above, concurrent use of the Maaco trademark by both the defendant and authorized Maaco franchisees will lead to consumer confusion regarding the automobile painting and body repair services defendant continue to offer under Maaco's marks. Defendant's patrons may believe they are dealing with an authorized Maaco franchisee, and may believe they are purchasing authentic Maaco products and services, when in fact, they are not. Id.

Finally, and most importantly, defendant's continued unauthorized use of the Maaco trademark is causing Maaco irreparable injury as a matter of law. Id. at 378. "It is widely recognized that a pirate's use of another's trademark can, without more, establish so substantial a likelihood of confusion among consumers as to warrant a preliminary injunction." Opticians at 196 (citing Arthur Guiness & Sons, PLC v. Sterling Pub. Co., Inc., 732 F.2d 1095 (2d Cir. 1984)) (emphasis added).

**3.    A balancing of the hardships favors Maaco.**

The underlying purpose of the balancing analysis is to ensure that the injunction will not harm the infringer more than denial of the injunction will harm the trademark's owner. Opticians at 197. In S & R, the court found that although the defendant presented a sympathetic position, by refusing to perform his obligations under the franchise agreement, "he had brought much of the difficulties of which he [now] complains upon himself. . . In choosing to stop his own performance under the contract, he effectively terminated the franchise agreement." S & R at 379. While agreeing that the defendant would be harmed by the threat of the loss of his franchise, the court held that a balancing of the hardships favored the franchisor:

> [defendant's] self inflicted harm is far outweighed by the immeasurable damage done Jiffy Lube by the infringement of its trademark. [Defendant] is not prevented from seeking damages, but he has not established the right to continue using the trademark [after his right to do so had been terminated].

8

Id. (emphasis added).  The Opticians court echoed a similar sentiment:

> [An infringer can] hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of the injunction upon itself.

Opticians at 197.

Similarly, defendant here has brought any difficulties it may endure as a result of the requested relief upon itself.  Defendant has failed to pay franchise fees and advertising fees, and has failed to submit weekly sales reports as required under the Franchise Agreement.  Although defendant may suffer as a result of this injunction, "[its harm] is far outweighed by the immeasurable damage done to [Maaco]" as a result of defendant's infringement upon Maaco's proprietary marks.  S & R at 379.

Finally, the Opticians court observed that "one of the goals of the preliminary injunction analysis is to maintain the status quo, [which is] defined as 'the last, peaceable, noncontested status of the parties.'"  Opticians at 197.  Prior to the commencement of this suit, the Maaco mark could only be used by authorized Maaco franchisees.  Granting an injunction would restore this state of affairs.  Id.

**4.      The preliminary and injunction will further the public interest.**

While public interest may be defined in a number of ways, "in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused."  Opticians at 197 (citing 2 McCarthy §30:21).  "'Preventing deception of the public is itself in the public interest.'"  Id. (Quoting from S K & F, Co. v. Premo Pharmaceutical Laboratories, 625 F. 2d 1055, 1057 (3d Cir. 1980) (emphasis added)).  "The entire raison d'etre for regulating the use of registered trademarks ... is to protect the public from confusion as to the origin and source of the products offered for sale."  Paramount Pictures v. Dorney Park Coaster Co., 698 F.Supp. 1274, 1285 (E.D. Pa. 1988).

As discussed above, where two parties are concurrently using the identical mark, consumer confusion will surely follow.  Thus, defendant's unauthorized use of the Maaco mark damages the public interest.  S & R at 379.  The S & R court found that:

> harm to the public interest is much like irreparable injury to the trademark owner.  [Defendant], who is likely to be found an infringer at trial, is thus likely, if not certainly, causing confusion among Jiffy Lube patrons.  [Accordingly], injunctive relief would be in the public's interest.

Id.

Similarly, defendant's continued use of the Maaco trademark and trade dress is certainly causing confusion among Maaco's patrons.  The public has a right to not be deceived or confused by defendant's unauthorized use of the Maaco trademark.  Patrons who are paying for what they believe to be authorized Maaco goods and services should receive authorized Maaco goods and services.  They should not receive goods and services which, although sold under the Maaco name, may not meet Maaco's standards.  Accordingly, injunctive relief would be in the public interest.

**B.    MAACO IS ENTITLED TO ENJOIN DEFENDANTS' VIOLATION OF THE FRANCHISE AGREEMENT RESTRICTIVE COVENANT.**

In determining whether to preliminarily enforce the Franchise Agreement restrictive covenant, the same four factors discussed above (plaintiff's likelihood of success on the merits, irreparable harm to plaintiff, a balancing of the hardships and the public interest) must be considered.  Novus Franchising, Inc. v. Taylor, 795 F.Supp. 122, 127 (M.D.Pa. 1992).  As will be shown below, the facts here support the issuance of an injunction prohibiting defendant's operation of an automobile painting and body repair shop in violation of the Franchise Agreement restrictive covenant.

**1.    Maaco has a strong likelihood of success on the merits at trial.**

10

A restrictive covenant will be upheld where:

(1)    the covenant relates to either a contract for the sale of goodwill or other subject property;

(2)    the covenant is supported by adequate consideration; and

(3)    the scope of the covenant is reasonable in both time and territory.

Piercing Pagoda, Inc. v. Hoffner, 465 Pa. 500, 351 A.2d 207, 210 (1976); Novus Franchising, supra at 127 (adopting the Piercing Pagoda test).

In Piercing Pagoda, plaintiff franchisor and defendant franchisee entered into several franchise agreements under which defendant was granted the right to operate several ear piercing and earring shops. The franchise agreement at issue in Piercing Pagoda contained a restrictive covenant, under which defendant agreed that, for the three year period following the termination of the franchise agreement, he would not own, operate or participate in any other earring or ear piercing business within 30 miles of any existing Piercing Pagoda location or within one mile of his former Piercing Pagoda location. Id., 351 A.2d at 209.

Defendant later terminated the franchise agreement and began to operate an ear piercing shop within 10 to 15 miles of plaintiff's Piercing Pagoda location. Plaintiff sued to enforce the restrictive covenant and, on appeal, the Pennsylvania Supreme Court found the restrictive covenant valid. Id. at 210-213.

First, the court found that plaintiff had a protectable interest in the sale of its franchise to defendant, and that the covenant was supported by adequate consideration:

The franchise agreement provided a service which [defendant] received . . . an opening line of inventory; basic training in the fundamentals of ear piercing; directions for market development; the use of a corporate name that carried with

11

it some degree of identity in the Eastern part of Pennsylvania; and an exclusive right to sell the product in an exclusive area.

Id. at 211.  The court concluded that:

> By the use of the franchisor's name and ability the franchisees availed itself of the beneficial provisions of the franchise contract.  In doing so, it made use of the franchisor's name which the law recognizes as a protectable interest. . .  The existing franchise itself is a legitimate business interest and therefore protectable.

Id. (emphasis added).  See also Novus Franchising at 127-128.

The court next addressed the issue of whether the covenant was reasonable.  The court explained that a franchise agreement restrictive covenant will be upheld where the restrictions are reasonably necessary to protect the franchisor without imposing undue burden on the franchisee, and where the restrictions are reasonably limited as to time and geographical extent.  Id. at 212.

The Piercing Pagoda court found the 30 mile - three year/one year restriction reasonable:

> This is not a covenant which restricts the ability of the [defendant] to pursue its business interests in areas other than that limited area around [plaintiff's] existing Piercing Pagoda operation and the five franchise sites given to [defendant] under the original franchise agreement . . .  The covenant in this case is reasonably limited since it is within such territory and during such time as may be reasonably necessary for the protection of the franchisor without imposing undue burden on the franchisee.

Id. at 213.

The same considerations should support this Court's enforcement of the ten mile - one year restrictive covenant contained in defendant's Franchise Agreement, which provides that:

> 17.    Covenants
>
> *    *    *
>
> C.    Franchisee covenants that for a period of one (1) year after the expiration or termination of this Agreement, regardless of the cause of termination, or the date upon which Franchisee ceases to operate the business franchised hereunder following termination or expiration of this Agreement, whichever is later, Franchisee

12

shall not either directly or indirectly, for himself or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation:

(1)    [Divert or attempt to divert any business or customer of the business franchised hereunder to any competitor, by direct or indirect inducement or otherwise, to do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System;

Employ or seek to employ any person who is at that time employed by Maaco or by any other franchisee of Maaco, or otherwise directly or indirectly to induce such person to leave his or her employment thereat]; or

(2)    Own, maintain, engage in, be employed by or have any interest in any business specializing in whole or in part in providing automobile painting or body repair services or products at the premises of the Center or within a radius of ten (10) miles of the Center.

Franchise Agreement, Section 17.

First, the covenant here is related to the sale of a protectable interest and was supported by adequate consideration. Maaco provided defendant with a training program; opening promotion and initial advertising at the Center; continuing advisory assistance; specifications regarding inventory, supplies, equipment and interior and exterior signs; a confidential operating manual; and the use of Maaco's trade names, trademarks and service marks and trade dress. See Franchise Agreement, Sections 1 and 3. See also Piercing Pagoda at 210.

Next, the covenant is reasonable in both time and geographic scope. Under the Franchise Agreement, defendant agreed that for a one (1) year period following the termination of the Franchise Agreement, it would not divert any business from the Center; perform any acts injurious to the Maaco System or its trade names, trademarks or service marks; induce any employee of Maaco or its franchisees to leave its employment; or have any interest in an automobile painting or body repair business within a ten

(10) miles radius of the Center.  This covenant is valid under the <u>Piercing Pagoda</u> test, as it is "within such territory and during such time as may be reasonably necessary for [Maaco's] protection without imposing undue hardship" on defendant.  <u>Id.</u> at 213.  Defendant is free to pursue other business interests, and may operate a business similar to its former Maaco business in areas other than the limited ten mile area surrounding its former franchise location.  <u>See</u> <u>also</u> <u>Novus Franchising</u> at 128 (restrictive covenant providing that former franchisee "not engage in a business which competes with the franchisor for a period of two years in the former franchise territories" held valid).

2.    <u>**Maaco will suffer irreparable harm if the restrictive covenant is not enforced.**</u>

In <u>Novus Franchising</u>, Judge Rambo found that the former franchisee's violation of the franchise agreement restrictive covenant would cause irreparable harm to the franchisor:

> Irreparable harm may be present where the franchisor/franchisee relationship is about to break up:  `The purpose of the covenant is to protect against loss of control of reputation, loss of goodwill, and customer confusion.  In general, the courts have held these are sufficient grounds for a finding of irreparable injury.' . . . [A] competing former franchisee, which had `gained knowledge and experience from the franchisor' and could use this knowledge and experience to `serve former or potential customers of the franchisor' would work a severe prejudice on the franchisor <u>which would be difficult to measure through money damages</u>.

<u>Id.</u> at 130 (quoting from <u>Economou v. Physicians Weight Loss Centers of America, Inc.</u>, 756 F.Supp. 1024 (N.D. Ohio 1991) (emphasis added)).

The same is true here.  The purpose of the Franchise Agreement restrictive covenant is to protect Maaco against loss of reputation, damage to its goodwill and customer confusion which may result should defendant continue to operate its automobile painting and body repair shop at the former franchise location.  Defendant has gained valuable knowledge and experience from Maaco during its tenure with Maaco.  To permit defendant to use this knowledge and experience to continue to service Maaco's former

14

and potential customers would irreparably harm to Maaco.  Id.  "Although some of [Maaco's] damages may be measurable in monetary terms, others -- such as [loss of] goodwill, are too nebulous to ascertain." Id. at 131.

### 3. A balancing of the hardships and a consideration of the public interest favors preliminary enforcement the restrictive covenant.

Maaco has a protectable interest in re-franchising defendant's area and in protecting its goodwill, reputation and customers.  While defendant may suffer monetary harm as a result of the enforcement of the restrictive covenant, its self-inflicted harm is outweighed by the irreparable harm Maaco will suffer should an injunction not issue.  Id. at 130-131.

Maaco is merely attempting to enforce the benefit of its bargain with defendant as contained in the Franchise Agreement.  By executing the Franchise Agreement, defendant agreed to be bound by the restrictive covenant.  Defendant cannot now complain of the burden imposed by the restrictive covenant, as defendant brought such burden upon itself by breaching the Franchise Agreement.  Where the harm imposed on a party by the issuance of preliminary relief is brought upon that party by its own unlawful behavior, such harm should be discounted in the preliminary injunction analysis.  See Opticians at 197.

Finally, enforcing the restrictive covenant is in the public interest.  As stated by the court in Novus Franchising:

> [h]igh courts in Pennsylvania . . . have determined . . . that protecting the interests in goodwill of employers and franchisors as embodied in non-competition clauses outweighs [the argument that restrictive covenants restrict freedom of competition].  This court will follow that long-established line of authority [and enforce the restrictive covenant].

Id. at 132.

15

## III. <u>CONCLUSION</u>

For all the above reasons, plaintiff Maaco Enterprises, Inc. respectfully requests this Court to grant its Motion for Preliminary and Permanent Injunction.

Respectfully submitted,


BY:     _____

Joseph Schumacher
Kimberly S. Toomey
Attorney I.D. Nos. 45726/75198
WIGGIN & DANA LLP
1055 Westlakes Drive, 3rd Floor
Berwyn, PA 19312
(215) 545-5200

Attorneys for Plaintiff

Dated:  August 13, 2002.

16

## CERTIFICATE OF SERVICE

I, Kimberly S. Toomey, certify that I have this day served a true and correct copy of the below described pleading or motion upon defendant at the address listed below:

Pleading or Motion served:     Plaintiff's Motion for Preliminary and Permanent Injunction; Memorandum of Law in Support Thereof; and Proposed Order.

Defendant:     Grasaldo, Inc.
Maaco Auto Painting and Bodyworks
12680 S.E. Berwick Court
Hobe Sound, FL 33455

Mode of Service:     Via Federal Express

_____
Kimberly S. Toomey

Date: August 13, 2002